UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

TIFFANY A. LAW-KOZLOWSKI,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

**Decision and Order**

19-CV-474-HBS
(Consent)

───────────────────────────────

## I.   INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c).  The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 7, cited hereafter as "Tr."), and familiarity is presumed.  This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  Dkt. Nos. 9, 11.  Plaintiff Tiffany A. Law-Kozlowski challenges the final decision of the Commissioner of Social Security (the "Commissioner") that she is not entitled to Supplemental Security Income under Title XVI of the Social Security Act.  The Court has deemed the motions submitted on the papers under Rule 78(b).

## II.   LEGAL STANDARD

"The scope of review of a disability determination . . . involves two levels of inquiry.  We must first decide whether [the Commissioner] applied the correct legal principles in making the determination.  We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and

citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g).

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation and editorial marks and citations omitted). It means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing the Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner

merely because substantial evidence would have supported the opposite conclusion. *Id.* "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d) (2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to determine the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

### III.  DISCUSSION

Plaintiff argues that the ALJ failed to sufficiently develop the record, particularly in light of her *pro se* status. Because the Court agrees, it need not address her other arguments on appeal.

4

The ALJ has an affirmative duty to develop the administrative record due to the "non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). "When a claimant properly waives his right to counsel and proceeds pro se, the ALJ's duties are heightened." *Id.* (citation and internal quotation marks omitted). And where, as here, the claimant has a mental impairment and is proceeding *pro se*, the ALJ's duty to develop the record is "doubly heightened." *Calhoun v. Comm'r of Soc. Sec.*, No. 18-CV-6070-FPG, 2019 WL 1949743, at *3 (W.D.N.Y. May 2, 2019) (citation omitted).

The ALJ's duty to develop the record means that the ALJ must obtain a claimant's "complete medical history" for at least the 12 months preceding the month in which the claimant filed his or her application. 20 C.F.R. § 404.1512(d). The ALJ must "make every reasonable effort" to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so. *Id.* "Every reasonable effort" means that the ALJ will make an initial request for evidence from the medical source and, if the evidence is not received, will make one follow-up request between 10 and 20 calendar days after the initial request. *Id.* §§ 404.1512(d)(1), 416.912(d)(1).

On appeal—and now represented by counsel—Plaintiff argues that the ALJ failed to fulfill his duty to develop the record because he failed to secure Plaintiff's primary care records from St. Vincent Health Center. At the hearing, Plaintiff testified that she treated at St. Vincent for her primary care. Tr. 42. She indicated that she treated at the 1500 Broadway Street location,

but she did not identify a specific primary care doctor; instead, she explained that "they usually just let me see whoever." Tr. 42.

After discussing this information with Plaintiff at the hearing, the ALJ indicated that the Agency would request records from St. Vincent, along with other providers Plaintiff identified. Tr. 45. The Agency appears to have sent a records request to one Dr. Arshad Banday of "Love Joy St. Vincent" located at 1595 Bailey Avenue on July 21, 2015, and a follow-up request on July 31, 2015. Tr. 410. On August 13, 2015, Love Joy St. Vincent responded to the Agency's follow-up request indicating that it never received the original request and asking the Agency to resubmit it. Tr. 412. But there is no indication the Agency ever did so, and there are no records from St. Vincent Health Center or "Love Joy St. Vincent" in the administrative record.

The Commissioner does not dispute that the ALJ failed to obtain the records from St. Vincent. Instead, the Commissioner argues that the ALJ successfully obtained *other* treatment records and thus sufficiently fulfilled his duty to make "reasonable efforts" to develop the record. Dkt. No. 11-1 at 10-11.

Although the ALJ did obtain other records on Plaintiff's behalf, the Court finds that the ALJ did not make reasonable efforts to obtain the primary care records *from St. Vincent*. Admittedly, the circumstances are somewhat confusing: Plaintiff did not identify a specific primary care doctor at St. Vincent, and she appears to have treated at more than one location there. For instance, some of Plaintiff's records indicate that she treated with Dr. Banday and a Dr. Stevens (or Stephens) at St. Vincent's Bailey Avenue address, while other records reference

6

St. Vincent's Broadway Street address. *See, e.g.*, Tr. 189, 205, 209, 263. However, the address Plaintiff gave at the hearing was 1500 Broadway Street. Although the Agency sent a request to St. Vincent twice, it did not send it to the correct address that Plaintiff identified at the hearing, and in any case, it never re-submitted the original request when St. Vincent asked for it. The Court finds that the Agency's failure to contact the correct location and its failure to re-submit the original request pursuant to St. Vincent's instructions do not constitute "reasonable efforts" to secure the records.

The absence of Plaintiff's primary care records creates a gap in the record that the Court is not convinced is harmless. One problem in particular is the absence of treatment records from St. Vincent concerning Plaintiff's sleep disorder. This impairment was one of Plaintiff's main complaints that she alleged significantly interfered with her ability to maintain employment: Plaintiff testified that because she could not sleep through the night, and when she finally did fall asleep, she could not get up for work, and consequently was often absent and ultimately terminated. Tr. 37, 466.

One of Plaintiff's primary care providers at St. Vincent—Dr. Jiyeon Jung—referred Plaintiff for a sleep study. Tr. 575. The sleep study revealed obstructive sleep apnea, sleep associated hypopneas, snoring, hypoxemia, and abnormal sleep architecture. Tr. 579. Dr. Alexander Gelfer, the physician who interpreted the sleep study, diagnosed Plaintiff with obstructive sleep apnea and excessive daytime sleepiness. Tr. 580. Yet the ALJ found Plaintiff's sleep disorder non-severe and did not account for it in his RFC determination. Tr. 17. As

7

Plaintiff argues, for the ALJ to fully evaluate her sleep impairment—which was objectively supported by the record—he needed the records from the primary care providers at St. Vincent who treated Plaintiff and referred her for the sleep study in the first place.

A court must first "be satisfied that the ALJ provided plaintiff with a full hearing under the [SSA]'s regulations and also fully and completely developed the administrative record" before it can consider whether substantial evidence supports the ALJ's decision. *Id.* (quotation marks and citations omitted). Remand is warranted if the ALJ fails to fulfill his or her duty to develop the record. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996). Here, in light of the sleep study evidence and Plaintiff's testimony regarding the effects of her sleep impairment on her ability to maintain employment, the Court cannot conclude that the ALJ's analysis of Plaintiff's sleep disorder without the benefit of her primary care records was free of legal error or supported by substantial evidence. Accordingly, remand is required.

### IV. CONCLUSION

For the reasons discussed herein, the Court denies the Commissioner's motion (Dkt. No. 11) and grants Plaintiff's cross-motion (Dkt. No. 9). The Court vacates the Commissioner's final decision and remands the matter for further proceedings consistent with this Decision and Order. The Clerk of Court is directed to close the case.

SO ORDERED.

                                                    */s/Hugh B. Scott*
                                                    Hon. Hugh B. Scott
                                                    United States Magistrate Judge

DATED: September 17, 2020